GUIDRY, J.
*1190 Plaintiff, Ashanti Green, as tutrix of the minors, Dave Peterson, III and David Peterson, appeals from a judgment of the trial court granting summary judgment in favor of Allstate Insurance Company ("Allstate") and dismissing her claims against Allstate with prejudice. For the following reasons, we affirm.
FACTUAL AND PROCEDURAL HISTORY
On July 16, 2007, Dave Peterson, while driving a motorcycle he had jointly purchased with Benjamin Gibson sixteen days earlier, was struck by an SUV being driven by Michael Johnson. The accident, which occurred as Johnson backed his SUV into a roadway in Baton Rouge, Louisiana, resulted in Peterson's death.
At the time of his death, Peterson resided with his girlfriend, Ashanti Green. The motorcycle was insured by American Southern Home Insurance Company ("American Southern") under a liability policy with uninsured/underinsured motorist ("UM") coverage issued to Green, with Peterson listed as a rated driver. Also, Gibson, the co-owner of the motorcycle, was insured by an automobile liability insurance policy issued by Allstate, which included UM coverage.
Green instituted this suit as tutrix of her two minor sons with Peterson, asserting survival and wrongful death claims on their behalf. Through original and supplemental petitions, Green named as defendants, among others, American Southern as the insurer of the motorcycle and Allstate in its capacity as the automobile insurer of Gibson, alleging that UM coverage was provided to Peterson under those policies.[1] Pursuant to a motion to dismiss filed jointly by Green and American Southern, the claims against American Southern under the policy it issued to Green were dismissed with prejudice, with Green reserving all rights to proceed against all other defendants.
Over the course of this litigation, Allstate filed several motions for summary judgment alleging various defenses to UM coverage under the policy it issued to Gibson.[2] At issue in this appeal is Allstate's third motion for summary judgment with regard to the policy issued to Gibson, filed on March 4, 2015, wherein it asserted an additional coverage defense based on a specific contractual exclusion in the policy, stating that UM coverage is excluded for bodily injuries incurred in a motor vehicle owned by the insured if the motor vehicle is insured for UM coverage under another *1191 policy. According to Allstate, because the motorcycle was insured under the UM provisions of the American Southern policy issued to Green, UM coverage under co-owner Gibson's policy with Allstate was excluded.
Following a hearing on the motion, the trial court agreed and rendered judgment on September 3, 2015, granting Allstate's motion for summary judgment and dismissing plaintiff's claims against Allstate with prejudice. Green now appeals from the trial court's judgment, asserting that the trial court erred in granting summary judgment and dismissing her claims against Allstate, because a reading of the policy shows that it extends UM coverage to the motorcycle Peterson was driving. Green further contends that the exclusion that Allstate attempts to invoke violates public policy as a "back-door" method for rejection of UM coverage, which does not comport with the exclusive method of rejecting UM coverage set forth in LSA-R.S. 22:1295(1)(a)(ii),[3] and as an attempt to usurp the insured's right to select the UM policy under which the insured would prefer to recover insurance benefits.
DISCUSSION
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Lieux v. Mitchell, 06-0382, p. 9 (La. App. 1st Cir. 12/28/06), 951 So.2d 307, 314, writ denied, 07-0905 (La. 6/15/07), 958 So.2d 1199. A motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B)(2).[4]
When the issue before the court on the motion for summary judgment is one on which the party bringing the motion will bear the burden of proof at trial, the burden of showing there is no genuine issue of material fact remains with the party bringing the motion. Fouquet v. Daiquiris & Creams of Mandeville, L.L.C., 10-0233, p. 3 (La. App. 1st Cir. 9/13/10), 49 So.3d 44, 46. An insurer seeking to avoid coverage through summary judgment bears the burden of proving some exclusion applies to preclude coverage. Fouquet, 10-0233 at p. 3, 49 So.3d at 46.
Interpretation of an insurance policy ordinarily involves a legal question that can be properly resolved by a motion for summary judgment. Miller v. Superior Shipyard and Fabrication, Inc., 01-2683, p. 4 (La. App. 1st Cir. 11/8/02), 836 So.2d 200, 203. An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation *1192 of contracts set forth in the Civil Code. Bernard v. Ellis, 11-2377, p. 9 (La. 7/2/12), 111 So.3d 995, 1002. The role of the judiciary in interpreting insurance contracts is to ascertain the common intent of the parties as reflected by the words in the policy. La. C.C. art. 2045 ; Peterson v. Schimek, 98-1712, p. 4 (La. 3/2/99), 729 So.2d 1024, 1029. When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent, and the agreement must be enforced as written. La. C.C. art. 2046 ; Fouquet, 10-0233 at p. 4, 49 So.3d at 47.
Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy. La. R.S. 22:881. Each provision in the policy must be interpreted in light of the other provisions so that each is given meaning; one provision of the insurance contract should not be construed separately at the expense of disregarding other provisions. La. C.C. art. 2050 ; Peterson, 98-1712 at p. 5, 729 So.2d at 1029. An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion. Peterson, 98-1712 at p. 5, 729 So.2d at 1029. That is, the rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent. Peterson, 98-1712 at p. 5, 729 So.2d at 1029.
Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume. Bernard, 11-2377 at pp. 9-10, 111 So.3d at 1002. If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. Bernard, 11-2377 at p. 10, 111 So.3d at 1002
Uninsured motorist coverage embodies a strong public policy, which is to provide full recovery for innocent automobile accident victims who suffer damages caused by a tortfeasor who has no coverage or is not adequately covered by liability insurance. Cutsinger v. Redfern, 08-2607, p. 5 (La. 5/22/09), 12 So.3d 945, 949. The underlying purpose of uninsured motorist coverage is "to promote and effectuate complete reparation, no more or no less." Cutsinger, 08-2607 at p. 5, 12 So.3d at 949 (quoting Hoefly v. Government Employees Ins. Co., 418 So.2d 575, 579 (La. 1982) ). As such, any exclusion from UM coverage in an insurance policy must be clear and unmistakable. Duncan v. U.S.A.A. Insurance Company, 06-363 (La. 11/29/06), 950 So.2d 544, 547.
When the existence of UM coverage under a policy of automobile insurance is at issue, a two-step analysis is utilized: (1) the automobile insurance policy is first examined to determine whether UM coverage is contractually provided under the express provisions of the policy; and (2) if no UM coverage is found under the policy provisions, then the UM statute is applied to determine whether statutory coverage is mandated. Green ex rel. Peterson v. Johnson, 14-0292 (La. 10/15/14), 149 So.3d 766, 773-774.
In seeking summary judgment, Allstate asserts that UM coverage for Peterson is excluded because the motorcycle he was riding at the time of the accident, which was co-owned by Gibson, is insured for *1193 UM coverage under another policy, i.e., the American Southern policy issued to Green. The portion of Allstate's insurance policy upon which it relies, entitled "Part V Uninsured Motorist Insurance Coverage SS" of its policy, provides, in pertinent part:
Exclusions-What is not covered
We will not pay for damages an insured person is legally entitled to recover because of:(1) bodily injury to an insured person while in, on, getting into or out of a motor vehicle owned by you or the injured insured person, if the motor vehicle is not insured for this coverage under this policy.
(2) bodily injury to anyone while in, on, getting into or out of, or when struck by a motor vehicle you own which is insured for this coverage under another policy.
From our review of the policy at issue, we find that it unambiguously excludes coverage for "bodily injury to anyone while in, getting into or out of, or when struck by a motor vehicle you own which is insured for this coverage under another policy."[5] At the time of the accident at issue, Peterson was on a motorcycle he co-owned with Gibson, which was insured for UM coverage under another policy with American Southern.[6] Therefore, the exclusion clearly applies in the instant case, and Peterson is not entitled to UM coverage under the Allstate policy.
Furthermore, we do not find that statutory UM coverage is mandated under the facts of this case. Although Louisiana's strong public policy favors UM coverage and a liberal construction of the UM statute, it is well-settled that a person who does not qualify as a liability insured under a policy of insurance is not entitled to UM coverage under the policy. Magnon v. Collins, 98-2822, p. 5 (La. 7/7/99), 739 So.2d 191, 196. The liability portion of the Allstate policy with regard to insured persons provides, in pertinent part:
*1194 Insured Persons
(1) While using your insured auto:
(a) you ,
(b) any resident , and
(c) any other person using it with your express or implied permission.
The policy further defines an insured auto, in pertinent part:
Insured Autos
(2) An additional four wheel private passenger auto or utility auto you become the owner of during the premium period. This auto will be covered if we insure all other private passenger autos or utility autos you own. You must, however, tell us within 60 days of acquiring the auto ....
In this case, Peterson is entitled to liability coverage only if he qualified as an insured under the portion of the policy extending coverage to a permissive user of an "insured auto" under the liability section. Because the motorcycle at issue is not described on the declarations page and is not a substitute vehicle, it could only qualify as an "insured auto" as an after-acquired vehicle. However, the after-acquired vehicle provision contained in the liability portion of the policy states that an "insured auto" includes "[a]n additional four wheel private passenger auto or utility auto you become the owner of during the premium period." (Italics added.) Accordingly, a motorcycle does not meet the policy definition of an insured auto for liability purposes. Therefore, Peterson is not an insured person under the liability portion of the policy, and he is not entitled to UM coverage. See Cadwallader v. Allstate Insurance Company, 02-1637, p. 10 (La. 6/27/03), 848 So.2d 577, 584.
Finally, we do not find that the exclusion of UM coverage in the instant case violates public policy. Louisiana Revised Statute 22:1295(1)(c), known as the "anti-stacking" provision, limits an insured to recovery under only one policy and prohibits an insured from combining or stacking coverage, except when the insured is injured "while occupying an automobile not owned by said injured party, resident spouse or resident relative." (Emphasis added.) See also Pitts v. Fitzgerald, 01-0543, p. 8 (La. App. 1st Cir. 5/10/02), 818 So.2d 847, 852-853. A person who is insured under the UM provisions of several different insurance policies may recover under one, and only one, of the policies. Pitts, 01-0543 at p. 8, 818 So.2d at 853 ; see also McKenzie & Johnson, Insurance Law and Practice, 15 La. Civ. Law Treatise § 4:27 (4th ed. 2012) (noting that the main theme of the provision is that a person can recover under only one UM policy). Accordingly, the exclusion contained in the Allstate policy mirrors the law already in place regarding multiple coverage available to an insured, and as such, is not violative of public policy.[7]
*1195 CONCLUSION
For the above and foregoing reasons, we affirm the September 3, 2015 judgment of the trial court, granting summary judgment in favor of Allstate Insurance Company and dismissing Green's claims against Allstate with prejudice. All costs of this appeal are assessed against Ashanti Green.
AFFIRMED.
WHIPPLE, C.J.,
I respectfully disagree with the majority's conclusions that the Allstate policy clearly excludes coverage herein and, thus, that the summary judgment dismissing Green's claims should be affirmed. Rather, as discussed below, I find that there are conflicting provisions within the UM portion of the Allstate policy that render the exclusion upon which Allstate relies ambiguous.[1]
*1196 Interpretation of an insurance policy ordinarily involves a legal question that can be properly resolved by a motion for summary judgment. Miller, 836 So.2d at 203. An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Civil Code. Bernard v. Ellis, 2011-2377 (La. 7/2/12), 111 So.3d 995, 1002. Thus, if the policy wording is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. LSA-C.C. art. 2046 ; Bernard, 111 So.3d at 1002. However, if a provision of the policy is ambiguous, the ambiguous contractual provision must be construed against the insurer who furnished the contract's text and in favor of the insured. See LSA-C.C. art. 2056 ; Peterson v. Schimek, 98-1712 (La. 3/02/99), 729 So.2d 1024, 1029.
Moreover, the court has a duty to interpret an insurance contract as a whole , according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy. See LSA-R.S. 22:881. One provision of the insurance contract should not be construed separately at the expense of disregarding other provisions. LSA-C.C. art. 2050 ; Peterson, 729 So.2d at 1029.
Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume. Bernard, 111 So.3d at 1002. However, summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Miller, 836 So.2d at 203.
Moreover, uninsured motorist coverage embodies a strong public policy, which is to provide full recovery for innocent automobile accident victims who suffer damages caused by a tortfeasor who has no coverage or is not adequately covered by liability insurance. The underlying purpose of uninsured motorist coverage is "to promote and effectuate complete reparation, no more or no less." Cutsinger v. Redfern, 2008-2607 (La. 5/22/09), 12 So.3d 945, 949 (quoting Hoefly v. Government Employees Ins. Co., 418 So.2d 575, 579 (La. 1982) ).
To carry out the objective of providing reparation for persons injured through no fault of their own, the UM statute, LSA-R.S. 22:1295,[2] is liberally construed. Bernard, 111 So.3d at 1003. The liberal construction given the UM statute requires the statutory exceptions to coverage be interpreted strictly. Moreover, any exclusion from UM coverage in an insurance policy must be clear and unmistakable. Duncan v. U.S.A.A. Insurance Company, 2006-363 (La. 11/29/06), 950 So.2d 544, 547.
When the existence of UM coverage under a policy of automobile insurance is at issue, a two-step analysis is utilized: (1) the automobile insurance policy is first examined to determine whether UM coverage is contractually provided under the express provisions of the policy; and (2) if no UM coverage is found under the policy provisions, then the UM statute is applied to determine whether statutory coverage is statutorily mandated. Green ex rel. Peterson v. Johnson, 2014-0292 (La. 10/15/14), 149 So.3d 766, 773-774. Because the contention by Allstate in support of its motion for summary judgment was that UM coverage was specifically excluded under its policy, the first step is to examine whether the policy provisions clearly and *1197 unambiguously exclude UM coverage under the facts herein, and if the policy is found to exclude UM coverage, then the next step would be to consider whether the UM statute mandates coverage despite the policy language to the contrary. Because I find the policy itself to contain conflicting provisions, I would not reach Green's public policy argument.
Turning to the first step of the analysis, the UM provisions of the Allstate policy must be examined to determine whether contractual UM coverage was excluded for the accident at issue in this case. As previously determined by the Louisiana Supreme Court in an earlier appeal of a prior grant of summary judgment to Allstate in this matter, Peterson met the definition of an "insured person" under the UM provisions of the Allstate policy, because he was a "person while in, on, getting into or out of an 'insured auto' with [the policyholder's] express or implied permission." Moreover, the Supreme Court reasoned that the co-owned motorcycle could be considered an "insured motor vehicle" for purposes of UM coverage because it fell within the definition of a "land motor vehicle" in the policy's UM provisions and was acquired by the policyholder (Gibson) during the policy period, within the sixty days prior to the accident.[3] See Green ex rel.Peterson, 149 So.3d at 774-776 & n.8.
Nonetheless, in support of its most recent motion for summary judgment, Allstate relies upon the exclusions section of "Part V Uninsured Motorist Insurance Coverage SS" of its policy, which states:
Exclusions-What is not covered
We will not pay for damages an insured person is legally entitled to recover because of:
(1) bodily injury to an insured person while in, on, getting into or out of a motor vehicle owned by you or the injured insured person, if the motor vehicle is not insured for this coverage under this policy.
(2) bodily injury to anyone while in, on, getting into or out of, or when struck by a motor vehicle you own which is insured for this coverage under another policy.
Allstate argues that under the second exclusion quoted above, UM coverage under this policy is excluded herein because the motorcycle is insured for UM coverage under another policy, i.e., the American Southern policy issued to Green.
However, in my view, this provision, although expressed as an exclusion in the Allstate policy, is essentially an "escape" clause, which is a type of "other insurance" clause often found in the "other insurance" provision of a policy.[4] Most insurance policies *1198 contain some sort of "other insurance" clause addressing how liability should be apportioned between two or more automobile liability insurance companies which have issued policies providing concurrent or double coverage. There are three basic types of "other insurance" clauses: (1) pro rata, (2) excess, and (3) escape. A pro rata clause provides for a sharing of responsibility among the insurers, an excess clause defines the coverage provided under the policy as excess over other valid and collectible insurance, and an escape clause purports to make coverage under the policy applicable only in the event that there is no other insurance coverage available to the insured. McKenzie & Johnson, Insurance Law and Practice, 15 La. Civ. Law Treatise § 7:19, at 699-700 (4th ed. 2012).
A policy may contain more than one of these clauses, each being utilized for different scenarios under which coverage is invoked. For example, a policy may generally provide for pro-rata coverage where there is other insurance, but may define the coverage afforded as "excess" coverage in the event of a non-owned vehicle and may further contain an "escape" clause with regard to an additional insured under the "omnibus" clause. See Graves v. Traders and General Insurance Company, 200 So.2d 67, 73 (La. App. 1st Cir. 1967), amended and affirmed, 252 La. 709, 214 So.2d 116 (1968).
The "other insurance" clause in one policy may or may not be harmonious with the "other insurance" clauses contained in another policy or policies providing coverage for a particular claim. Thus, often the "other insurance" clauses must be reconciled in order to apportion responsibility for payment of the claim among the insurers. McKenzie & Johnson, Insurance Law and Practice, 15 La. Civ. Law Treatise § 7:19, at 700 (4th ed. 2012). In attempting to reconcile two disparate "other insurance" clauses, the proper approach is to try to give effect to both "other insurance" clauses and to find them mutually repugnant only if, by giving each effect, the insured is left with no coverage.
*1199 Citgo Petroleum Corporation v. Yeargin, Inc., 95-1574 (La. App. 3rd Cir. 2/19/97), 690 So.2d 154, 167, writs denied, 97-1223, 97-1245 (La. 9/19/97), 701 So.2d 169, 170. Where "other insurance" clauses in competing policies are mutually repugnant, they will not be given effect. See, e.g., Graves v. Traders & General Insurance Company, 252 La. 709, 214 So.2d 116, 118 (1968) (holding that the excess and escape clauses in two policies were mutually repugnant and, thus, ineffective), and Dette v. Covington Motors, Inc., 486 So.2d 805, 806-807 (La. App. 1st Cir. 1986) (where there is a conflict between an escape clause of one policy and an excess clause in another policy, the net effect is that both clauses are cancelled out).
In the instant case, the exclusion upon which Allstate relies is most properly characterized as an "escape" clause because, by its terms, it seeks to absolve Allstate completely from liability for UM coverage if the owned vehicle (i.e., the motorcycle) is insured for this coverage (UM coverage) under another policy. See generally Citgo Petroleum Corporation, 690 So.2d at 167 ; see also Sifers v. General Marine Catering Company, 892 F.2d 386, 393 (5th Cir. 1990). Ordinarily, the coverage analysis would next require a determination of whether this escape clause conflicts with or is mutually repugnant to the "other insurance" clause in the American Southern policy to determine whether it can be given effect herein. However, I note an apparent conflict within the Allstate policy itself. Thus, in accordance with the court's duty to interpret an insurance contract as a whole and not to construe one provision of the insurance contract separately at the expense of disregarding other provisions, in my view, the apparently conflicting clauses within the UM provisions of the Allstate policy itself must be addressed first.[5]
Specifically, in addition to containing the above exclusion of coverage if the owned vehicle is covered by another policy, i.e., the escape clause, the UM provisions of the Allstate policy also contain an "other insurance" clause with pro rata and excess provisions, as follows:
If There Is Other Insurance
If the insured person was in, on, getting into or out of a vehicle you do not own which is insured for this coverage under another policy, this coverage will be excess. This means that when the insured person is legally entitled to recover damages in excess of the other policy limit, we will pay up to your policy limit, but only after the other insurance has been exhausted. No insured person may recover duplicate benefits for the same elements of loss under this coverage and the other insurance. No more than one coverage may apply as excess insurance.
*1200 With respect to property damage, this coverage will be excess over any other valid and collectible insurance against property damage. If this policy and one or more other policies apply to an accident on a primary basis, we will bear our proportionate share, as it applies to the total limits available, up to the full limits of liability for coverage under this policy. [Emphasis added.]
By the very terms of this provision of the Allstate policy, in the event of other insurance, Allstate has defined the UM coverage provided therein as excess only where the injury to the insured involves a non-owned vehicle or where the claim is a property damage claim, neither of which is not the case before us. Thus, under the facts of this case and pursuant to the terms of the "Other Insurance" clause, the UM coverage provided by Allstate's policy is primary coverage in the event there is other insurance. See also Pardue v. Dean, 515 So.2d 543, 544-545 (La. App. 1st Cir. 1987) (if a vehicle has more than one UM policy on it, then for purposes of the UM statute, all such policies are primary); also see generally Penton v. Hotho, 601 So.2d 762, 765 n.4 (La. App. 1st Cir. 1992) (explaining that in the analysis of competing "other insurance" clauses in automobile liability policies, courts have determined that the insurer of the vehicle is the primary insurer and the insurer of the non-owned vehicle is in the nature of a true excess insurer). As such, pursuant to the bolded portion of its "other insurance" provision above, Allstate agreed to bear its proportionate share with other policies that apply to the accident on a primary basis, up to the limits of its coverage liability under the policy (a pro rata clause).[6] Allstate's contention that the exclusion discussed above (i.e., the escape clause) relieves it from any UM liability herein clearly conflicts with its promise under this "other insurance" provision to pay its pro rata share if there is other insurance.
One case that addressed conflicting "other insurance" clauses within the same policy is Offshore Logistics Services, Inc. v. Mutual Marine Office, Inc., 462 F.Supp. 485, 492-493 (E.D. La. 1978). In Offshore Logistics Services, the federal district court found that a protection and indemnity policy actually included two "other insurance" clauses, one which made the policy excess if there was other insurance (an excess clause) and the other providing for no contribution whatsoever in the event the insured was otherwise covered for the loss (an escape clause). Concluding that these two clauses created an "obvious ambiguity" in the policy, the court gave effect to the excess clause rather than the escape clause, in an effort to give the ambiguous provisions the meaning most favorable to the insured. Offshore Logistics Services, Inc., 462 F.Supp. at 493.
While not binding on this court, I find the analysis of the federal district court in Offshore Logistics Services to be the proper approach this court should take herein. As stated above, any exclusion from UM coverage in an insurance policy must be clear and unmistakable, Duncan, 950 So.2d at 547, and if a provision of the policy is ambiguous, the ambiguity must be construed against the insurer and in favor of the insured. See LSA-C.C. art. 2056 ; Peterson, 729 So.2d at 1029. Giving the exclusion (the escape clause) the meaning suggested by Allstate would conflict with Allstate's obligations under the "other insurance" provision of the UM portion of its policy. Because the UM policy exclusion upon which Allstate relies for purposes *1201 of its latest motion for summary judgment purports to exclude coverage when the accident or injury involves an owned vehicle insured for UM coverage under another policy, while the "other insurance" provisions obligate Allstate to pay its pro-rata share, I would conclude that there are conflicting provisions within the UM portion of the Allstate policy, rendering the exclusion at issue herein ambiguous. Thus, in my view, Allstate failed to prove its entitlement to summary judgment dismissing Green's claims against it on the basis of the exclusion (escape clause) in the UM portion of its policy and the September 3, 2015 judgment granting summary judgment in its favor should be reversed.
For these reasons, I respectfully dissent.

Also named as defendants were Johnson and his insurer, State Farm Mutual Automobile Insurance Company, and Allstate in its capacity as the UM insurer of Green and her resident relatives. The claim against Allstate as the UM insurer of Green and her resident relatives was dismissed on summary judgment on the basis that Peterson, the decedent, was not a resident relative of Green within the meaning of the policy, because he was not married to her.

For a more thorough recitation of the procedural history involving Allstate's previous motions for summary judgment, see the Louisiana Supreme Court's decision in this matter, Green ex rel. Peterson v. Johnson, 14-0292, pp. 1-3 (La. 10/15/14), 149 So.3d 766.

The Uninsured Motorist Coverage statute ("the UM statute") was originally enacted as LSA-R.S. 22:1406 but was redesignated as LSA-R.S. 22:680 by Acts 2003, No. 456, § 3 and again redesignated as LSA-R.S. 22:1295 by Acts 2008, No. 415, § 1. At the time of the accident herein, July 16, 2007, the UM statute was cited as LSA-R.S. 22:680. However, for ease of discussion, we will refer to the UM statute by its current designation of LSA-R.S. 22:1295, as there have been no substantive changes to the relevant portions cited herein since the date of the accident. See Green ex rel. Peterson, 14-0292 at p. 5 n.2, 149 So.3d at 771 n.2.

Louisiana Code of Civil Procedure article 966 was recently amended by 2015 La. Acts, No 422 § 1, effective January 1, 2016. Since the amended version of article 966 does not apply to any motion for summary judgment pending adjudication or appeal on the effective date of the Act, the prior version of LSA-C.C.P. art. 966 is applicable herein. See 2015 La. Acts, No. 422 §§ 2 & 3.

We note that whether this provision of the policy is considered an "exclusion" or an "escape clause," which is a type of other insurance clause wherein coverage under a policy is applicable only in the event that there is no other insurance coverage available to the insured, is immaterial in the instant case. McKenzie & Johnson, Insurance Law and Practice, 15 La. Civ. Law Treatise § 7:19, at 699-700 (4th Ed. 2012) (describing different types of other insurance clauses). Even if we were to find the provision at issue to be an escape clause, the Allstate policy would still not provide UM coverage for Peterson. From our reading of the Allstate and the American Southern policies, there is no conflict between the foregoing provision in the Allstate policy and the pro rata other insurance clause in the American Southern policy, as application of both policies does not result in a gap in primary coverage or no coverage to Peterson. See American International Specialty Lines Insurance Company v. Canal Indemnity Company, 352 F.3d 254, 265-267 (5th Cir. 2003). Accordingly, both policies should be applied as written, and UM coverage would still be excluded under the Allstate policy. See American International Specialty Lines Insurance Company, 352 F.3d at 273.
Furthermore, we do not find that if the exclusion at issue were considered to be an escape clause that it would be in conflict with the other insurance clause in the Allstate policy. The other insurance clause in the Allstate policy provides in the third paragraph that "If this policy and one or more other policies apply to an accident on a primary basis..." Because coverage is excluded pursuant to the clear and unambiguous terms of the Allstate policy, the Allstate policy does not apply to the accident, and the other insurance clause in the Allstate policy is not implicated. See McGow v. McCurry, 412 F.3d 1207, 1220 n.9 (11th Cir. 2005).

The Louisiana Supreme Court has already determined that Peterson would meet the definition of an "insured person" under the UM provision of the Allstate policy. See Green ex rel. Peterson, 14-0292 at pp. 10-11, 149 So.3d at 774-775.

We likewise note that, under the facts of this case, the exclusion at issue does not violate public policy by usurping the right of an insured person to select which of two available policies of insurance to seek recovery under. It is undisputed that Green accepted the UM limits provided by the American Southern policy, and accordingly, dismissed American Southern as a defendant in this litigation. Furthermore, the reasoning in Taylor v. Tanner, 442 So.2d 435, 438 (La. 1983), wherein the Louisiana Supreme Court found that the acceptance of the policy limits from one UM carrier was not deemed to constitute an implied choice or election to reject the limits from other policies that may be available, is inapplicable to the facts of this case. In Taylor, the insured person was injured while riding in a non-owned vehicle, and accordingly, fell within the exception to the stacking provision. 442 So.2d at 438. Accordingly, under the facts of this case, we need not address whether the exclusion violates public policy by usurping an insured person's right of selection.

With one exception, the anti-stacking provision of the UM statute, LSA-R.S. 22:1295(1)(c), provides that an insured seeking recovery with multiple limits of UM coverage available is limited to recovery under only one policy and may not combine or stack coverages. The one exception set forth in the statute permits stacking if the injured party is occupying a vehicle not owned by him. In such a situation, the UM coverage on the vehicle in which the injured party was an occupant is primary, and should that primary UM coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from one other UM coverage available to him. Boullt v. State Farm Mutual Automobile Insurance Co., 99-0942 (La. 10/19/99), 752 So.2d 739, 742-743. Clearly, the exception to the anti-stacking provision is not applicable herein because Peterson owned (as a co-owner) the motorcycle which he was driving at the time of the accident.
Nonetheless, in Wyatt v. Robin, 518 So.2d 494, 495 (La. 1988), the Louisiana Supreme Court held that even though an insured may not stack UM coverages, the insured has the right to choose under which UM provision he would prefer to recover. Moreover, a plaintiff's acceptance of the policy limits of one UM policy is irrelevant to the plaintiff's right of selection. Wyatt, 518 So.2d at 495-496 ; see also Vincent v. State Farm Mutual Auto. Ins. Co., 526 So.2d 818 (La. App. 3rd Cir.), writ denied, 532 So.2d 150 (La. 1988). (Parents of a motorcyclist killed on his own motorcycle sought to recover wrongful death damages under the parents' State Farm UM policies after the limits of their deceased son's UM policy listing the motorcycle were paid. Citing Wyatt, the court found that the anti-stacking provision was not violated by allowing them to elect to pursue coverage under one of their State Farm policies, as long as the UM coverage benefits recovered did not exceed the maximum coverage provided by any one policy. Accordingly, the court explained that State Farm would receive a credit for the $10,000.00 paid by UM insurer of the son.).
Notably, Wyatt involved UM coverage extending to a vehicle not listed in the policy at issue therein. The holding in Wyatt was subsequently limited by the enactment of LSA-R.S. 22:1295(1)(e), which provides that UM coverage does not extend to vehicles not described in the policy or not newly acquired within the meaning of the policy. However, as discussed in footnote 3 infra, because the motorcycle at issue was a newly acquired vehicle as defined in the Allstate policy, the limitation or exclusion of UM coverage as set forth in LSA-R.S. 22:1295(1)(e) would not apply herein
Moreover, in Pardue v. Dean, 515 So.2d 543, 544-545 (La. App. 1st Cir. 1987), this court held that if a vehicle has more than one UM policy on it, then for purposes of the UM statute, all such policies are primary, and the anti-stacking provision would not preclude recovery under both policies. See also Capone v. King, 467 So.2d 574, 579-589 (La. App. 5th Cir.), writs denied, 468 So.2d 1203, 1205 (La. 1985).
Green asserts on appeal that the motorcycle was covered by two UM policies, the American Southern policy and the Allstate policy, both policies are primary and the anti-stacking provision does not preclude recovery under both. Alternatively, she argues that even if recovery is limited to only one UM policy, the injured party has the right to select the policy under which he or she receives insurance benefits. Thus, she contends that to the extent that the exception upon which Allstate relies attempts to take that right of selection away, it violates public policy.

See footnote 3 of the majority opinion.

Even though the motorcycle was not described on the declarations page of the Allstate policy, as noted by the Supreme Court, it was acquired by the policyholder (Gibson) during the policy period and within the 60-day time period prior to the accident. Green ex rel. Peterson, 149 So.3d at 776 & n.8. Under the UM provisions of the policy, an "insured auto" includes a motor vehicle of which the insured became the owner during the premium period, provided however that the insured inform Allstate within 60 days after acquiring the vehicle and pay any additional premium. Because the accident occurred only 16 days after the motorcycle was acquired, the loss occurred within the 60-day period during which the insured was required to inform Allstate of the acquisition. As such, although not a listed vehicle under the policy, the motorcycle could be considered a newly acquired vehicle to which UM coverage would be extended. See also LSA-R.S. 22:1295(1)(e).

Although not a controlling decision by which this court is bound, I note that in Sifers v. General Marine Catering Company, 892 F.2d 386, 393 (5th Cir. 1990), LIGA argued that the clause in the Workers' Compensation/Employer Liability (WC/EL) policy issued by an insolvent insurer was not an "escape clause," but rather was an "exclusion clause" whose function was to exclude coverage under the policy if a Protection and Indemnity (P & I) policy covering the same risk existed. In rejecting that argument, the United States Fifth Circuit Court of Appeals, applying Louisiana law to the coverage issue, stated as follows:
As an initial matter, we question whether the distinction which LIGA attempts to draw between an "escape" clause and an "exclusion" clause is significant: Any clause that permits an insurer to deny coverage can be accurately characterized as an "escape" clause. The effect of the "other insurance" clause in the WC/EL policy is to deny coverage under that policy or, in other words, to "escape" liability thereunder completely. The effect of a more typical escape clause is undeniably the same.
Sifers, 892 F.2d at 393 (emphasis added).
Contrast, on the other hand, Steinwinder v. McCall's Boat Rentals, Inc., 2002-0019 (La. App. 4th Cir. 3/20/02), 815 So.2d 1059, 1061-1063, wherein the Fourth Circuit Court of Appeal rejected the appellants' contention that an exclusion in a Commercial General Liability policy, which excluded from coverage any sums for which coverage was provided by the terms of "Protection and Indemnity form SP-23 [a standard form providing P & I coverage]," whether or not such coverage was in place, was in fact an "escape clause" that conflicted with the escape clause of another policy, such that the two escape clauses were mutually repugnant and thus should not be given effect. In declining to interpret the exclusion as an "escape clause," the Fourth Circuit noted that the exclusion clearly and unambiguously excluded from coverage any risks that fell within the ambit of a P & I policy, regardless of whether such P & I coverage was actually in place.Steinwinder, 815 So.2d at 1062. Because the exclusion therein clearly sought to exclude from coverage a certain type of risk falling within the ambit of a different type of policy , regardless of whether such other coverage was actually in place, the clause therein was an exclusion and can be distinguished from the clause at issue in the present case which purports to allow Allstate to escape UM coverage if there is other UM insurance.

I disagree with the majority's contention in footnote 5 that whether this provision of the policy is considered an exclusion or an escape clause "is immaterial in the instant case." In justifying that statement, the majority concludes that the Allstate provision at issue (i.e., the escape clause entitled an "exclusion") does not conflict with the pro rata "other insurance" clause in the American Southern policy. However, because of the conflicting provision within the Allstate policy itself , which renders the exclusion upon which Allstate relies ambiguous, the coverage analysis should never reach the next step of determining whether the Allstate escape clause conflicts with or is mutually repugnant to the "other insurance" clause in the American Southern policy.
Moreover, in light of this court's duty to interpret an insurance contract as a whole , see LSA-R.S. 22:881, and to refrain from construing one provision of the insurance contract separately at the expense of disregarding other provisions, LSA-C.C. art. 2050, I find the analysis of McGow v. McCurry, 412 F.3d 1207, 1220 n.9 (11th Cir. 2005), cited by the majority in footnote 5, to be unpersuasive.

The American Southern policy insuring the motorcycle similarly contains a pro rata clause in its "other insurance" provision.