818 So.2d 847 (2002)
Louis PITTS, Sr., Felicia Pitts, Blair Pitts, Jude Pitts and Roderick Pitts
v.
James B. FITZGERALD, State Farm Mutual Automobile Insurance Company, Allstate Insurance Company, Progressive Security Insurance Company, and Government Employees Insurance Company.
No. 2001 CA 0543.
Court of Appeal of Louisiana, First Circuit.
May 10, 2002.
*848 F. Scott Kaiser, Freddie Pitcher, Jr., Kimberly Hood, Baton Rouge, Counsel for Plaintiffs/Appellees Louis Pitts, Sr., et al.
Ian A. MacDonald, Craig Richardson, Lafayette, Counsel for Defendant/Appellant Progressive Security Ins. Co.
Before: CARTER, C.J., PARRO and IAN W. CLAIBORNE,[1] JJ.
*849 CLAIBORNE, Judge.
At issue in this appeal is whether the Louisiana anti-stacking statute, La. R.S. 22:1406, precludes plaintiff, Louis Pitts, Sr., from recovering under an uninsured/underinsured motorist (UM) provision of an automobile liability insurance policy issued to him on a vehicle owned by him but not involved in the accident in question. For the following reasons, we reverse the trial court judgment.

FACTS AND PROCEDURAL HISTORY
On November 8, 1997, Sadie Pitts and her daughter, Kirsten Pitts, suffered fatal injuries in an accident on Louisiana Highway 1 in Pointe Coupee Parish. The accident was alleged to have been caused solely by an intoxicated driver who suddenly crossed the center line of the highway and crashed into the Pitts' vehicle.[2] At the time of the accident, Kirsten was driving Sadie's 1996 Toyota Avalon and Sadie was seated in the back seat.[3] Louis Pitts, Sr., as surviving spouse and father, brought suit for the survival actions and wrongful deaths of Sadie and Kirsten.[4]
Louis Pitts alleged in his petition that Allstate Insurance Company (Allstate) issued a policy of liability insurance to Sadie Pitts and Louis Pitts for the vehicle involved in the accident.[5] Louis Pitts also alleged in his petition that the Allstate policy provided UM coverage for the underinsured portion of his loss. Additionally, Louis Pitts named Progressive Security Insurance Company (Progressive) as a defendant, seeking UM coverage under a policy insuring another vehicle he owned, a 1998 Mazda pickup truck, which was not involved in the accident.[6] Although Sadie and Kirsten were named as "driver-insureds" under the Progressive policy, the vehicle involved in the accident, the 1996 Toyota Avalon, was not listed as a covered vehicle in the Progressive policy.
Progressive filed a motion for summary judgment contending that La. R.S. 22:1406 prohibited the stacking of multiple UM policies and that the policy in question contained an exclusion for a non-covered vehicle that was owned by the insured's (Louis Pitts) relative (Sadie). Plaintiff filed a cross-motion for summary judgment arguing that he had a separate UM claim for his own "bodily injury," the wrongful death of his wife and daughter, caused by an underinsured motorist (the intoxicated driver), which was expressly covered by the Progressive policy. The trial court denied both motions for summary judgment on October 1, 1999. Shortly thereafter, the Louisiana Supreme *850 Court decided Boullt v. State Farm Mutual Automobile Insurance Company, 99-0942 (La.10/19/99), 752 So.2d 739, holding that divorced parents could each recover under their own individual UM policies for damages sustained as a result of the wrongful death of their minor daughter, without violating the anti-stacking statute.
Citing Boullt as authority, plaintiff renewed his motion for summary judgment on November 12, 1999. The parties reargued their respective motions, and on April 19, 2000, the trial court, relying on Boullt, signed a judgment granting plaintiffs renewed motion for summary judgment and awarding plaintiff $300 for attorney's fees and $5,000 for Progressive's arbitrary and capricious refusal to tender its UM policy limits.[7] It is from this judgment that Progressive appeals the granting of plaintiff's motion for summary judgment and the denial of its motion for summary judgment.

LAW AND ANALYSIS

Appellate Jurisdiction
It is the duty of appellate courts to examine subject matter jurisdiction sua sponte, even when the issue is not raised by the litigants. McGehee v. City/Parish of East Baton Rouge, XXXX-XXXX, p. 1 (La. App. 1st Cir.9/12/01), 809 So.2d 258, 260. The trial court granted plaintiff's motion for summary judgment but did not designate it as a final judgment for an appeal as required by La. Code Civ. P. art. 1915(B). The trial court signed the order of appeal; however, the mere signing of an order of appeal does not satisfy the requirements under La. Code Civ. P. art. 1915(B) for designation of a partial judgment as final for an immediate appeal. Deal v. Housing Authority of New Orleans, 98-1530, p. 3 (La.App. 4th Cir.2/17/99), 735 So.2d 685, 687, writ denied, 99-0728 (La.6/18/99), 745 So.2d 21.
Because the instant suit was filed before January 1, 2000, the 1997 version of La.Code Civ. P. art. 1915 is applicable to this case. See Belanger v. Gabriel Chemicals, Inc., XXXX-XXXX, p. 6 (La.App. 1st Cir.5/23/01), 787 So.2d 559, 564 n. 4, writ denied, 2001-2289 (La.11/16/01), 802 So.2d 612. The supreme court has determined that the pre-2000 language of La.Code Civ. P. art. 1915 is ambiguous with regard to the availability of appeal in cases under Article 1915(A)(3) involving summary judgment pursuant to La. Code Civ. P. art. 966(E). See Shell Pipeline Corp. v. Kennedy, XXXX-XXXX, p. 5 (La.10/16/01), 799 So.2d 475, 478. In light of the decision in Shell, we conclude the granting of the summary judgment in this case constitutes a final partial judgment and is appealable. Thus, we will consider the merits of Progressive's appeal regarding the granting of plaintiff's motion for summary judgment, as well as the concomitant denial of Progressive's motion for summary judgment.[8]

*851 Summary JudgmentStandard of Review

On appeal, summary judgments are reviewed de novo under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. J. Ray McDermott, Inc. v. Morrison, 96-2337, p. 9 (La.App. 1st Cir.11/7/97), 705 So.2d 195, 202, writs denied, 97-3055 and 97-3062 (La.2/13/98), 709 So.2d 753 and 754. The appellate court asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512, p. 26 (La.7/5/94), 639 So.2d 730, 750. Interpretation of an insurance contract is usually a legal question that can be properly resolved in the framework of a motion for summary judgment. Sanchez v. Callegan, 99-0137, p. 5 (La.App. 1st Cir.2/18/00), 753 So.2d 403, 405.

UM Coverage for Plaintiff's Wrongful Death Claim
When the trial court granted plaintiffs motion for summary judgment, it issued written reasons citing Boullt and held that plaintiffs claim under the UM provisions of Progressive's policy for wrongful death damages did not constitute an impermissible stacking of UM coverage. Progressive contends the trial court erred as a matter of law in concluding that its policy issued to plaintiff covering a vehicle not involved in the accident provided UM coverage for plaintiffs wrongful death claim.[9] Plaintiff argues that Progressive's policy expressly provided UM coverage to him as an insured because he sustained bodily injury in the form of wrongful death damages caused by an accident that arose out of the use of an underinsured vehicle. Plaintiff also contends that the supreme court's decision in Boullt allows his own UM claim for the wrongful death of his wife and daughter under his separate policy.
After thoroughly examining the record, Progressive's insurance policy issued to plaintiff, and the Boullt decision along with subsequent jurisprudence, we find that the "unique facts and circumstances" of Boullt, 99-0942 at 9, 752 So.2d at 744, are distinguishable from the instant case. Boullt does not provide authority for plaintiff to stack UM coverage of two policies available to him, one issued by Allstate covering the car involved in the accident and one issued by Progressive covering another vehicle owned by plaintiff.
Crucial to the distinction of the instant case from Boullt is the trial court's mischaracterization of the car involved in the accident as being "non-owned." The trial court erred in its written reasons by stating, "[t]he decedents, Sadie Pitts and Kirsten Pitts[,] were passengers in a nonowned *852 automobile."[10] From the facts alleged in plaintiffs' petition, we conclude that the vehicle involved in the accident was owned by Louis and Sadie Pitts. We are not persuaded by the fact that plaintiff was not the "registered owner" of the vehicle titled in his wife's name. There is nothing in the record to indicate that the vehicle titled in Sadie Pitts' name did not belong to the community property regime existing between Louis and Sadie Pitts. La. Civ.Code art. 2336 clearly recognizes that "[e]ach spouse owns a present undivided one-half interest in the community property." Thus, plaintiff owned the vehicle involved in the accident and Allstate's policy provided plaintiff UM coverage on that vehicle. See Iles v. American Mfrs. Mut. Ins. Co., 93-1149, p. 4 (La.App. 3d Cir.5/4/94), 640 So.2d 451, 453, writ denied, 94-1449 (La.9/23/94), 642 So.2d 1292.
In Boullt, the supreme court determined that divorced parents with separately owned insurance policies could recover damages under their respective policies for the wrongful death of their minor daughter who was a guest passenger in a vehicle not owned by either parent. Integral to the court's finding that allowing each parent to seek recovery under his or her own policy for his or her own individual damages would not violate the anti-stacking statute, was that the person seeking to combine coverages must be insured under all the policies for stacking to be an issue. Campbell v. State Farm Ins. Co., 2000-2218, p. 2 (La.App. 4th Cir.11/14/01), 804 So.2d 112, 113. Since the divorced parents in Boullt were not covered under each other's separate policies and were not covered by the policy on the vehicle that was involved in the accident and that vehicle was not owned by either parent, Boullt did not involve stacking. In contrast, the plaintiff in the instant case alleged in his petition that the policy of insurance issued by Allstate on his wife's car that was involved in the accident covered him for his underinsured loss. Plaintiff also had potential UM coverage under the policy issued by Progressive for another owned vehicle. Thus, stacking is clearly an issue in this case.
Stacking of UM coverages occurs when the amount available under one policy is inadequate to satisfy the damages alleged or awarded the insured and the same insured seeks to combine or stack one coverage on top of another for the same loss covered under multiple policies or under multiple coverages contained in a single policy. Boullt, 99-0942 at 5, 752 So.2d at 742. With one exception that does not apply in the instant case, Louisiana's anti-stacking statute prohibits an insured from combining or "stacking" UM benefits when the insured is seeking recovery with multiple limits of available UM coverage. See Boullt, 99-0942 at 6, 752 So.2d at 742. La. R.S. 22:1406(D) provides in pertinent part:
(1)(c)(i) If the insured has any limits of uninsured motorist coverage in a policy of automobile liability insurance, in accordance with the terms of Subsection D(1), then such limits of liability shall not be increased ... when the insured has insurance available to him under more than one uninsured motorist coverage provision or policy[.]
The language of the anti-stacking statute limits the insured to recovery under only *853 one policy, not allowing the insured to combine or stack coverages. The question of stacking only arises once it is determined that the person seeking to cumulate benefits on two or more uninsured motorist coverages is an "insured" under the terms of those policies. Boullt, 99-0942 at 7, 752 So.2d at 743. Plaintiff alleges in his petition that he is an insured under both the Allstate policy and the Progressive policy, and that both policies provide UM coverage. A person who is "insured" under the UM provisions of several different insurance policies may recover under one, and only one, of the policies. Seither v. Winnebago Industries, Inc., 2000-2196, p. 5 (La.App. 4th Cir.1/23/02), 808 So.2d 792, 797.

CONCLUSION
We find that the anti-stacking provision of La. R.S. 22:1406 prevents plaintiff from recovering wrongful death damages under the UM coverage in the Progressive policy, and therefore, the trial court erred in ruling that plaintiff was entitled to recover under Progressive's policy. Accordingly, we reverse the trial court's judgment in favor of plaintiff, grant the motion for summary judgment filed by Progressive, and remand this case to the trial court for further proceedings.[11] Costs of this appeal are assessed to plaintiff-appellant, Louis Pitts, Sr.
REVERSED, RENDERED, AND REMANDED.
NOTES
[1] Judge Ian W. Claiborne, retired, is serving as judge pro tempore by special assignment of the Louisiana Supreme Court.
[2] The negligence of the alleged intoxicated driver, James Fitzgerald, is not at issue in this appeal. Fitzgerald's insurer, State Farm Mutual Automobile Insurance Company (State Farm), settled with the plaintiffs and was dismissed from the lawsuit.
[3] Felicia Pitts, another daughter of Sadie Pitts, was in the vehicle's front passenger seat. Felicia suffered serious personal injuries; however, her claim for damages is not at issue in this appeal.
[4] Sadie Pitts' three sons, Blair, Jude and Roderick Pitts, also brought suit for the wrongful death of their mother and Felicia Pitts brought suit for her personal injuries suffered in the accident. The wrongful death claim of Louis Pitts, Sr. is the only claim at issue in this appeal.
[5] The plaintiff's Allstate policy is not in the record. We rely therefore on his admission that the policy was issued to him and Sadie Pitts.
[6] Similarly, plaintiffs named Government Employees Insurance Company (GEICO) and Allstate as defendants, seeking UM coverage under separate policies insuring the sons' (Blair, Jude and Roderick Pitts) vehicles. These claims are not at issue in this appeal.
[7] We note that in response to the trial court's granting of plaintiff's motion for summary judgment, GEICO moved for a new trial, which was denied on December 5, 2000. Progressive also appealed the denial of the motion for new trial; however, that appeal, Louis Pitts, Sr., et al. v. James B. Fitzgerald and Allstate Insurance Company, Docket No. 2000 CA 1846, has been dismissed because no briefs were filed.
[8] Progressive has assigned error to the trial court's denial of its motion for summary judgment. The denial of a motion for summary judgment is an interlocutory judgment and is not appealable absent a showing of irreparable injury. (Progressive did not allege irreparable injury.) See La.Code Civ. P. arts. 968, 1841 and 2083. See also Daniels v. Hancock Fabric Store, 2000-2556, p. 2 (La.App. 1st Cir.12/28/01), 804 So.2d 965, 966. However, as is the case with other interlocutory rulings, the denial of a motion for summary judgment may be reviewed in conjunction with other appealable issues for the sake of judicial economy. Kidd v. Independent Fire Ins. Co., 95-1273, p. 4 (La.App. 4th Cir.1/19/96), 668 So.2d 406, 408 n. 3. By challenging the denial of its motion in connection with an appeal of a final judgment granting summary judgment in favor of the plaintiff, Progressive has utilized the proper procedure to obtain review of the denial of its motion. Industrial Indem. Co. of Northwest v. Central Nat'l Ins. Co., 99-2535 (La.App. 1st Cir.12/22/00), 775 So.2d 1246, 1250, writ denied, 01-0225 (La.4/12/01), 790 So.2d 1. In this case, the coverage issues are the same in both motions, so our review of the trial court's granting of summary judgment in favor of the plaintiff will also constitute a review of the trial court's denial of Progressive's motion.
[9] Additionally, Progressive asserts that the trial court erred in not finding that its policy contained an applicable exclusion.
[10] A non-owned vehicle is defined in the Progressive policy as "any vehicle not owned by you ... or the spouse of the named insured." Sadie Pitts owned the 1996 Toyota Avalon involved in the accident. However, Sadie Pitts was also the spouse of Louis Pitts, the named insured of the Progressive policy. According to the plain language of the Progressive policy, the 1996 Toyota Avalon could not have been considered a "non-owned vehicle."
[11] By reversing the trial court's judgment, the issue of whether the trial court erred in awarding plaintiff attorney's fees and penalties pursuant to La. R.S. 22:1220 is rendered moot.