FAITH A. BOUDOIN

VERSUS

SAFECO INSURANCE COMPANY OF
OREGON, ET AL

NO. 23-CA-65

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 759-719, DIVISION "M"
HONORABLE SHAYNA BEEVERS MORVANT, JUDGE PRESIDING


October 25, 2023


**SCOTT U. SCHLEGEL**
**JUDGE**


Panel composed of Judges Fredericka Homberg Wicker,
Stephen J. Windhorst, and Scott U. Schlegel


**REVERSED IN PART; AFFIRMED IN PART;**
**REMANDED AS INSTRUCTED IN OPINION**
    **SUS**
    **FHW**
    **SJW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
FAITH A. BOUDOIN
    Paul E. Mayeaux

COUNSEL FOR DEFENDANT/APPELLANT,
RLI INSURANCE COMPANY
    Matthew D. Moghis
    William Peter Connick
    Michael S. Futrell
    Tucker H. Wimberly
    Thomas P. Owen, Jr.

COUNSEL FOR DEFENDANT/APPELLEE,
RURAL TRUST INSURANCE COMPANY
    Jason P. Foote
    Devin Caboni-Quinn
    Kaleigh K. Rooney

**SCHLEGEL, J.**

Defendant, RLI Insurance Company (RLI), appeals the trial court's September 7, 2022 Judgment, which found that Louisiana's anti-stacking provision, La. R.S. 22:1295(1)(c), did not apply to the uninsured/underinsured motorist (UM) insurance policies at issue in this matter. Consequently, the trial court denied RLI's summary judgment motion and granted summary judgment, in part, in favor of plaintiff, Faith Boudoin, and defendant, Rural Trust Insurance Company (Rural), as to the ranking or order of exhaustion of the UM policies at issue. RLI also contends on appeal that if the anti-stacking law applies, Ms. Boudoin must choose whether to recover from 1) her personal line of UM coverage issued by RLI, or 2) a line of UM coverage issued to her employer, Eatelcorp, LLC (Eatel), by Rural and co-defendant, Continental Casualty Company (Continental).[1]

For reasons explained more fully below, we reverse the trial court's September 7, 2022 Judgment granting summary judgment, in part, in favor of Ms. Boudoin and Rural on the issue of ranking, and grant summary judgment, in part, in favor of RLI, based on our finding that the anti-stacking law set forth in La. R.S. 22:1295(1)(c) applies to this matter. We also affirm, in part, the trial court's denial of RLI's summary judgment motion (and grant Continental's motion for summary judgment in the companion appeal), based on our finding that La. R.S. 22:1295(1)(e) prevents Ms. Boudoin from recovering against her employer's policy issued by Continental.

## FACTS AND PROCEDURAL BACKGROUND

On May 13, 2015, Ms. Boudoin was driving her own personal vehicle, a 2009 Mercury Mariner, in the course and scope of her employment with Eatel,

---

[1] Continental filed an appeal in companion appeal, Case No. 23-CA-123, also contesting the trial court's judgment with respect to the application of the anti-stacking law. It further argues that the trial court erred to the extent it found Ms. Boudoin can recover under its excess coverage policy issued to Eatel, in addition to Ms. Boudoin's personal UM policies.

when she was rear-ended by a 2014 Hyundai Accent driven by defendant, Teresa Fuhrman. Ms. Fuhrman's vehicle was covered by an automobile liability policy issued by Safeco Insurance Company of Oregon with a limit of $50,000.00, and she was also personally covered by a policy with Progressive Casualty Insurance Company with $15,000.00 limits. At the time of the accident, Ms. Boudoin personally maintained a policy with Allstate Property and Casualty Insurance Company (Allstate) that provided $250,000.00 in UM coverage, and a $1,000,000.00 personal umbrella policy with RLI. Eatel also maintained a commercial automobile policy through The Phoenix Insurance Company, a Travelers' company (Travelers) with $1,000,000.00 in UM coverage, an excess third-party liability policy with Continental with limits of $25,000,000.00, and a commercial excess/umbrella policy with Rural providing $10,000,000.00 in coverage.

Allstate tendered its policy limits of $250,000.00 to Ms. Boudoin, and on August 31, 2020, the trial court entered an order dismissing her claims against Allstate with prejudice. Ms. Boudoin also entered into a settlement agreement with Travelers on September 27, 2021 for $865,000.00 of its $1,000,000.00 UM policy limits, and on October 21, 2021, the trial court entered an order dismissing Travelers with prejudice. Following the settlement with Travelers, Ms. Boudoin, as well as several of the insurance companies, filed motions for summary judgment seeking rulings on coverage and ranking issues that are the subject of the present appeal.

Ms. Boudoin filed a summary judgment motion arguing that at the time of the accident she was covered by her personal UM policies and her employer's UM policies and that she is entitled to recover from all of them – her personal UM policy with RLI, as well as Eatel's UM policies with Continental and Rural. She further asked the trial court to rank the order of payment for the UM policies as

follows: 1) Allstate; 2) RLI; 3) Travelers; 4) Continental; and 5) Rural. Rural filed a similar summary judgment motion, but asked that the trial court rank its policy last in the order of payment arguing that its policy was a true excess policy.

Continental, on the other hand, argued in its summary judgment motion that the anti-stacking provision contained in the UM statute, La. R.S. 22:1295(1)(c), prohibited Ms. Boudoin from recovering against multiple UM policies because Ms. Boudoin owned the vehicle she occupied at the time of the accident. Continental also argued that, irrespective of whether coverage existed, La. R.S. 22:1295(1)(e) barred her from recovering under its policy because she was occupying a vehicle she owned at the time of the accident, which was not specifically listed in the Travelers or Continental policies. Therefore, Continental argued that Ms. Boudoin could only recover from her personal line of UM policies issued by Allstate and RLI.

RLI agreed that the anti-stacking provision applies in this matter, but filed its own motion for summary judgment arguing that Ms. Boudoin should be allowed to choose whether to pursue coverage under her personal line of UM policies with Allstate and RLI totaling $1,250,000.00 in limits, or Eatel's line of policies issued by Travelers, Continental, and Rural with total limits of $36,000,000.00. RLI further argued that if Ms. Boudoin chooses to recover under her personal line, then she could not recover any additional proceeds from RLI because she previously settled with Allstate and Travelers, which had combined UM policy limits of $1,250,000.00. RLI argued that allowing Ms. Boudoin to recover any further proceeds from RLI would violate the prohibition in La. R.S. 22:1295(1)(c) against increasing the limits provided under more than one policy. Finally, RLI argued that if the trial court reached the issue of ranking, its excess umbrella policy should be ranked after Travelers' primary UM policy.

Following oral argument on August 22, 2022, the trial court took the matter under submission. On September 7, 2022, the trial court issued a written judgment with reasons granting Ms. Boudoin's and Rural's motions for summary judgment, in part, as to ranking, and denied Continental and RLI's summary judgment motions. On October 3, 2022, the trial court also entered an order designating this judgment as final pursuant to La. C.C.P. art. 1915(B).

## DISCUSSION

The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action and is favored. La. C.C.P. art. 966(A)(2). Summary judgment shall be granted "if the motion, memorandum, and supporting documents shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). Appellate courts review the grant or denial of a motion for summary judgment *de novo*, using the same criteria applied by the trial court, to determine whether any genuine issue of material fact exists and whether the mover is entitled to judgment as a matter of law. *Simon v. State Farm Mut. Auto. Ins. Co.*, 16-46 (La. App. 5 Cir. 9/8/16), 201 So.3d 1007, 1009.

### *Anti-Stacking Law Applies*

Although Louisiana's public policy strongly favors UM coverage and a liberal construction of the UM statute, limitations on UM coverage are valid where they are authorized by statute. *Id.* at 1010. The primary issue before this Court is whether Louisiana's anti-stacking law, La. R.S. 22:1295(1)(c), applies to bar Ms. Boudoin from recovering against both her personal line of UM insurance and her employer's line of UM coverage. Stacking of UM coverages occurs when the amount available under one policy is inadequate to satisfy the damages alleged or awarded to the insured, and the same insured seeks to combine or stack one coverage on top of another for the same loss covered under multiple policies or

under multiple coverages contained in a single policy. *Boullt v. State Farm Mut. Auto. Ins. Co.*, 99-942 (La. 10/19/99), 752 So.2d 739, 742. Since 1977, with one exception set forth in the second part of the provision, Louisiana's anti-stacking law, La. R.S. 22:1295(1)(c), has prohibited insureds from combining or stacking UM benefits:

> (c) *If the insured has any limits of uninsured motorist coverage in a policy of automobile liability insurance, in accordance with the terms of Subparagraph (1)(a) of this Section, then such limits of liability shall not be increased because of multiple motor vehicles covered under such policy of insurance, and such limits of uninsured motorist coverage shall not be increased when the insured has insurance available to him under more than one uninsured motorist coverage provision or policy*; however, with respect to other insurance available, the policy of insurance or endorsement shall provide the following with respect to bodily injury to an injured party while occupying an automobile **not owned** by said injured party, resident spouse, or resident relative, and the following priorities of recovery under uninsured motorist coverage shall apply:
>
> (i) The uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary.
>
> (ii) Should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other uninsured motorist coverage available to him. In no instance shall more than one coverage from more than one uninsured motorist policy be available as excess over and above the primary coverage available to the injured occupant. [Emphasis added.]

This anti-stacking law prohibits recovery against multiple UM coverages available to the same insured, except under the limited circumstances prescribed above in the anti-stacking provision. *See* 15 La. Civ. L. Treatise, Insurance Law & Practice, McKenzie & Johnson, §4.27*, Stacking of multiple coverages – The 1977 anti-stacking provision.* Under the first section of the statute, an insured seeking to recover under multiple UM policies "is limited to recovery under only one policy and may not combine or stack coverages." *Boullt*, 752 So.2d at 743. In *Boullt,* the Louisiana Supreme Court explained that under the second part of the anti-stacking law, an exception to the stacking prohibition is permitted if: (1) the injured party is occupying an automobile **not owned** by the injured party, resident

spouse, or resident relative; (2) the UM coverage on the vehicle in which the injured party was an occupant is primary; and (3) the primary UM coverage is exhausted due to the extent of damages. *Id.*

Therefore, a person insured under the UM provisions of several different policies, and occupying a vehicle *owned* by the insured at the time of the accident, may recover under one, and only one, of the policies. *See Pitts v. Fitzgerald*, 01-543 (La. App. 1 Cir. 5/10/02), 818 So.2d 847, 853. Pursuant to the plain language of the statute, recovery under more than one policy is prohibited, except when the injured party is "occupying an automobile not owned by the injured party, resident spouse or resident relative." If the injured party is in a non-owned vehicle, then the statutory exception permits the injured party to recover under the UM coverage on the vehicle in which she is riding (statutory primary coverage) and also under one of the other UM policies available to her (statutory excess coverage). *See* 15 La. Civ. L. Treatise, Insurance Law & Practice, McKenzie & Johnson, §4.27, *Stacking of multiple coverages – The 1977 anti-stacking* provision. ("The main theme of the provision is that a person can recover under only one UM policy.") The parties do not dispute that Ms. Boudoin owned the vehicle she occupied at the time of the injury. Therefore, the anti-stacking exception does not apply and the plain language of La. R.S. 22:1295(1)(c) dictates that Ms. Boudoin can only pursue one line of UM coverage.[2]

Louisiana courts have addressed the issue of stacking in similar situations involving an employee operating his or her own vehicle while acting in the course

---

[2] The parties agree that the one policy limit does not apply to umbrella/excess policies (i.e., RLI umbrella/excess policy) purchased by the *same insured* to provide layers of additional coverage. "Layers of primary and excess UM coverage purchased by a single insured is the equivalent of one policy that provides the total limits of liability and should be treated as such under the anti-stacking provision." 15 La. Civ. L. Treatise, Insurance Law & Practice, McKenzie & Johnson, §4.31, *Stacking of multiple coverages – Excess and Umbrella Policies*; *Gentry v. Meade*, 99-1030, 99-1031 (La. App. 4 Cir. 4/19/00), 767 So.2d 60, 62, *writ denied*, 00-1969 (La. 10/6/00), 771 So.2d 85. "Policies purchased by different insureds that provide coverage for the same vehicle or person, however, should be examined more closely." 15 La. Civ. L. Treatise, Insurance Law & Practice, §4.31.

and scope of employment, and with UM coverage potentially available under separate policies issued to both the employee and employer. In *Irvin v. State Farm Mut. Auto. Ins. Co.*, 03-717 (La. App. 3 Cir. 12/10/03), 867 So.2d 777, *writ denied*, 03-3537 (La. 3/26/04), 871 So.2d 347, the plaintiff was struck from behind by an underinsured motorist while driving her own vehicle in the course and scope of her employment. State Farm provided UM coverage to both the plaintiff and her employer, and the plaintiff filed suit against State Farm in its capacity as the UM insurer for her employer. State Farm then filed a motion for summary judgment arguing that the Louisiana anti-stacking law prohibited the plaintiff from stacking her employer's UM policy on her personal UM policy. The trial court granted State Farm's summary judgment motion and plaintiff appealed.

On appeal, the plaintiff argued that the employer's UM policy covered her vehicle because it provided coverage for non-owned vehicles used in the employer's business. The appellate court reasoned that it did not need to reach the question of coverage under the employer's policy because even if that policy provided her UM coverage, the anti-stacking law, La. R.S. 22:1406(D)(1)(c), now redesignated as La. R.S. 22:1295(1)(c),[3] prevented a plaintiff who has her own UM insurance from receiving UM benefits under her employer's UM policy. *Id.* at 779. The *Irvin* court reasoned that:

> Ms. Irvin's accident falls clearly under the anti-stacking provision. ***Ms. Irvin herself has UM insurance. Even if she were insured under her employer's policy as she argues here***, under the language of the statute, she cannot increase her limits of UM coverage because she has insurance available to h[er] under more than one uninsured motorist coverage provision or policy. [Emphasis added.]
>
> *Id.*

---

[3]Acts 2003, No. 456 § 3 redesignated La. R.S. 22:1406(D)(1)(c) to La. R.S. 22:680(1)(c), and Acts 2009, No. 415, § 1, redesignated La. R.S. 22:680(1)(c) to La. R.S. 22:1295(1)(c). The redesignations did not include pertinent substantive revisions to the anti-stacking law.

In reaching its decision, the *Irvin* court also relied on the following reasoning contained in the First Circuit's decision in *Pitts*, 818 So.2d at 852-53, finding that the anti-stacking statute limits the insured to one UM policy:

> The language of the anti-stacking statute limits the insured to recovery under only one policy, not allowing the insured to combine or stack coverages. The question of stacking only arises once it is determined that the person seeking to cumulate benefits on two or more uninsured motorist coverages is an "insured" under the terms of those policies.

Similarly, in *Rowe v. Williams*, 41,082 (La. App. 2 Cir. 8/23/06), 938 So.2d 1185, 1188, the Second Circuit held that the anti-stacking provision precluded an employee from recovering UM benefits under both her employer's policy and her personal policy because she was driving her own vehicle at the time of the accident. The *Rowe* court reasoned that "[g]enerally, the UM coverage of the occupied vehicle is the applicable coverage, and Section (c)(i) establishes the general rule that the insured may not stack UM coverages even when the insured has coverage available to him under more than one policy." *Id.* at 1187. The *Rowe* court concluded that allowing the plaintiff to recover under both her personal UM policy and the employer's UM policy would violate the anti-stacking law. *Id.* at 1188.

Ms. Boudoin argues in opposition on appeal that the anti-stacking law was never intended to prevent a plaintiff from recovering against her own UM coverage that she purchased, as well as coverage purchased by the employer to cover its employee's vehicles. The trial court agreed with Ms. Boudoin's position and determined that the anti-stacking provision did not apply as all of the policies at issue are "primary" policies because they provide UM coverage for Ms. Boudoin's vehicle. However, the first portion of the anti-stacking provision applicable to this matter does not contain any language referencing an exception to the one policy limit based on the primary nature of the policies. Rather, the language referencing primary and excess policies is contained in the second portion of the statute

providing the exception for non-owned vehicles. As established above, the plain language of the anti-stacking law provides that the exception does not apply in this case because Ms. Boudoin owned the vehicle she occupied at the time of the accident.

In reaching its decision to treat all of the policies at issue as "primary," the trial court relied on several older decisions, including this Court's decision in *Capone v. King*, 467 So.2d 574, 579 (La. App. 5th Cir. 1985), *writ denied*, 468 So.2d 1203 and 468 So.2d 1205 (La. 1985), as well as the First Circuit's decision in *Pardue v. Dean*, 515 So.2d 543 (La. App. 1st Cir. 1987). Neither case, however, supports the trial court's departure from the plain language of La. R.S. 22:1295(1)(c) in this case.

We first find that the trial court erred by relying on *Capone, supra*, because the injured plaintiff in that matter was a passenger and did not own the vehicle she occupied at the time of the accident. As discussed in detail above, the applicable prohibitions set forth in the anti-stacking law differ greatly depending on whether or not the plaintiff owned the occupied vehicle. In analyzing whether the plaintiff could recover against various UM policies covering the vehicle, the *Capone* court analyzed the second portion of the anti-stacking provision containing the exception that only applies to non-owner occupants:

> The statute states that primary coverage is coverage on the "vehicle in which the injured party was an occupant", La. R.S. 22:1406(D)(1)(c)(i). Section 1406(D)(1)(C)(ii) (sic) states that once primary coverage is exhausted, the injured party may then reach one other non-primary policy. Because the Allstate, Aetna and Chicago policies all covered the car in which Capone was a passenger, they are all primary, and therefore available without reference to the above rule on stacking.[4]

> *Id.* at 579-80.

---

[4] The provisions referred to in *Capone, supra*, are La. R.S. 22:1295(1)(c)(i) and (ii) in the current version of the statute.

These provisions are not applicable to the analysis in the current matter because Ms. Boudoin was not a non-owner occupant who falls within the exception to the stacking prohibition. The primary/excess issue does not arise under the anti-stacking provision unless the injured party is occupying a vehicle that is not owned by the injured party, resident spouse, or resident relative. *See* 15 La. Civ. L. Treatise, Insurance Law & Practice, §4.31, fn. 4.

The trial court also erred by relying on the First Circuit's decision in *Pardue*, *supra*. Despite the apparent distinction between owned and non-owned vehicles when analyzing the anti-stacking provisions, the First Circuit incorrectly utilized the reasoning in *Capone*, *supra*, in a case involving a plaintiff who was injured in his own vehicle while driving in the course and scope of his employment. The plaintiff had a personal UM policy with Hanover Insurance Company and his employer had a UM policy with Aetna Casualty and Insurance Company. The plaintiff settled with Hanover and the trial court granted a summary judgment motion in favor of the employer's insurer, Aetna, finding that the anti-stacking law prohibited plaintiff from recovering additional UM proceeds. The First Circuit reversed based on its incorrect reliance on *Capone* and the anti-stacking exception as follows:

> The anti-stacking law seems at first blush to limit UM recovery to one policy for a person injured in his own car, and, under a limited exception, to two policies for one injured in a car he does not own. Yet the rule and the exception must be read *in pari materia* with the entire UM law. LSA–C.C. art. 17. The exception defines primary coverage as that coverage on the vehicle in which the person was injured. In *Breaux v. Louisiana Farm Bureau Mut. Ins. Co.,* 413 So.2d 988, 994 (La. App. 1st Cir.), *cert. denied*, 420 So.2d 453 (La. 1982), involving a plaintiff injured in his own vehicle, this court held that the coverage on that vehicle was his exclusive UM coverage. If, however, that vehicle has more than one UM policy on it, then for purposes of the statute, all such policies are primary. *Capone v. King*, 467 So.2d 574, 579-80 (La. App. 5th Cir.), *cert. denied*, 468 So.2d 1203, 1205 (La. 1985). And, according to the statute "other uninsured motorist

coverage available to [the insured]" is excess insurance. LSA–R.S. 22:1406 D(1)(c).

*Pardue*, 515 So.2d at 544-45.

The *Pardue* court even conceded that its decision was inconsistent with the plain language of the anti-stacking law, but nevertheless ruled inapposite, reasoning that "simple fairness dictates this interpretation of the anti-stacking law." *Id*. at 545. The court also expressed concerns that if the employer's policy did not provide coverage for an employee driving her own vehicle, it was pointless for the employer to pay for employee coverage. *Id*. at 545. However, this position overlooks the scenario where the employer's policy provides coverage to an employee that does not have UM coverage on her owned vehicle. In that instance, a stacking issue does not arise because it does not involve multiple policies bought by different insureds. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9.

Further, the continued validity of the reasoning in *Pardue* in the First Circuit is in question because in its more recent decisions, *Pitts*, *supra*, and *Green v. Johnson*, 16-1525 (La. App. 1 Cir. 1/10/18), 241 So.3d 1188, 1194, the First Circuit has come full circle and recognized that the plain language of La. R.S. 22:1295(1)(c) limits an insured to recover under only one policy unless the insured is occupying a non-owned vehicle at the time of the accident. The *Green* court explained as follows:

> Louisiana Revised Statute 22:1295(1)(c), known as the "anti-stacking" provision, limits an insured to recovery under only one policy and prohibits an insured from combining or stacking coverage, except when the insured is injured "while occupying an automobile not owned by said injured party, resident spouse or resident relative." (Emphasis added.) See also *Pitts v. Fitzgerald*, 01-0543, p. 8 (La. App. 1st Cir. 5/10/02), 818 So.2d 847, 852-853. A person who is insured under the UM provisions of several different insurance

policies may recover under one, and only one, of the policies. *Pitts*, 01-0543 at p. 8, 818 So.2d at 853; see also McKenzie & Johnson, Insurance Law and Practice, 15 La. Civ. Law Treatise § 4:27 (4th ed. 2012) (noting that the main theme of the provision is that a person can recover under only one UM policy).

*Id.*

Accordingly, we find that La. R.S. 22:1295(1)(c), the anti-stacking provision, applies in this case and Ms. Boudoin is limited to recovery under only her personal line of coverage, similar to the plaintiffs in *Irvin* and *Rowe*, *supra*, because she owned the vehicle she occupied at the time of the accident.

### Selection of Line of Coverage

While RLI acknowledges that the anti-stacking law applies in this matter and that Ms. Boudoin can only recover from one line of coverage, RLI suggests that Ms. Boudoin should be allowed to choose to recover either from her own personal line of coverage or from her employer Eatel's line of coverage. In support of this argument, RLI cites to the Louisiana Supreme Court's decision in *Wyatt v. Robin*, 518 So.2d 494, 495 (La. 1988). The *Wyatt* court considered whether a plaintiff, injured while occupying an owned vehicle covered by a UM policy, must accept coverage on the UM policy covering that vehicle or may choose another available policy with higher coverage, and determined in favor of the right to select. *Id*; *see also* 15 La. Civ. L. Treatise, Insurance Law & Practice, McKenzie & Johnson, §4.29*, Stacking of multiple coverages – Right to select policy*.

Shortly thereafter though, the legislature enacted La. R.S. 22:1406(D)(1)(e), now La. R.S. 22:1295(1)(e), which provides as follows:

(e) The uninsured motorist coverage does not apply to bodily injury, sickness, or disease, including the resulting death of an insured, ***while occupying a motor vehicle owned by the insured if such motor vehicle is not described in the policy under which a claim is made***, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy. This provision shall not apply to uninsured motorist coverage provided in a policy that does not describe specific motor vehicles. [Emphasis added.]

"Apparently, this amendment was intended to and does cripple substantially the right of selection recognized in *Wyatt*." 15 La. Civ. L. Treatise, Insurance Law & Practice, §4.29; *see also Halphen v. Borja*, 06-1465 (La. App. 1 Cir. 5/1/07), 961 So.2d 1201, 1209, *writ denied*, 07-1198 (La. 9/21/07), 964 So.2d 338. In *Irvin*, 867 So.2d at 779-780, discussed above, the appellate court determined that Section 1406(D)(1)(3), now La. R.S. 22:1295(1)(e), was applicable and served as an additional basis to bar the plaintiff from recovering against her employer's UM policy:

> Assuming that Ms. Irvin is correct in arguing that she is covered under the liability portion of her employer's policy, La.R.S. 22:1406(D)(1)(e) prevents her from recovering under the UM portion of the policy because her vehicle is not described in the policy. An examination of the vehicle schedule attached to the policy in question reveals that no 1999 Ford Escort was listed. Since her vehicle was not listed in the policy, she cannot recover under the UM provisions of that policy.

*Id.* at 780.

Our review of the evidence in the record indicates that the Travelers' policy included an extensive list of covered vehicles, but Ms. Boudoin's vehicle was not included. The Court recognizes the argument made by RLI that Section 1295(1)(e) should not apply because the declarations page in the Travelers' policy indicates that in addition to covering the employer's owned autos, designated as Symbol 2, it also designates coverage under Symbol 13, "[a]ny auto you do not own and that is a covered auto under this policy for liability insurance and it is licensed or principally garaged in Louisiana." The declarations page indicates that covered autos for liability purposes is Symbol 1, "Any 'Auto'". The Court, however, rejects RLI's argument that these particular provisions in the policy amount to a description of Ms. Boudoin's vehicle. This Court reads "described" in the first sentence Section 1295(1)(e) to mean a description of "specific motor vehicles" as defined in the second sentence of the provision, not a general description of every

vehicle licensed or principally garaged in Louisiana.[5] In addition, because the Travelers' policy does in fact describe "specific motor vehicles" that are covered by the policy, we find that the second sentence of Section 1295(1)(e) is not applicable.

This Court also recognizes RLI's argument that Section 1295(1)(e) only applies to statutory UM coverage, as opposed to contractual UM coverage. But RLI fails to cite to any caselaw or treatise that makes this distinction and the plain language of the statute does not support this argument. Further, this Court has indeed applied the statute to preclude contractual coverage in situations where the policy did not list or describe the vehicle in prior decisions. *See Shackelford v. State Farm Mut. Auto. Ins. Co.*, 94-415 (La. App. 5 Cir. 11/29/94), 646 So.2d 1209 (policy at issue provided contractual UM coverage but did not list insured's vehicle); *Galliano v. State Farm Mut. Auto. Ins. Co.*, 606 So.2d 580 (La. App. 5th Cir. 1992).

Accordingly, based on our *de novo* review, we conclude that just as in *Irvin*, *supra*, Ms. Boudoin does not have the option to select recovery under her employer's line of coverage.

***Credit to RLI for Prior Recovery***

Finally, RLI argues that Ms. Boudoin cannot recover any additional UM benefits from it because the limits of her personal line of coverage is $1,250,000.00, and she received payments from Allstate and Travelers, which have the same combined limits. In its reasons, the trial court declined to resolve this

---

[5] Though the trial court did not address the application of La. R.S. 22:1295(1)(e) in its reasons for judgment, we do observe that in discussing coverage under the Travelers' policy, the trial court also indicated that the policy covered autos under Symbol 9, which includes: "Only those 'autos' you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes 'autos' owned by your 'employees', . . . or members of their households but only while used in your business or your personal affairs." The declarations page does not include any designations to indicate that Travelers' coverage included coverage pursuant to Symbol 9; rather, the reference to Symbol 9 in the policy is merely included in a list of possible coverages that the insured could purchase. We do not opine as to whether coverage designated under Symbol 9 would satisfy the requirement to "describe specific motor vehicles" in Section 1295(1)(e).

issue finding that it was not before "this court, at this time." We decline to decide this issue in the first instance, and therefore, remand the matter to the trial court for resolution of the issue of RLI's request for a credit and any other related issues.

## DECREE

For the reasons stated above, we reverse the trial court's September 7, 2022 Judgment granting Ms. Boudoin's and Rural's summary judgment motions, in part, on the issue of ranking and deny those summary judgment motions in their entirety. We grant RLI's summary judgment, in part, based on our finding that the anti-stacking provision applies to limit Ms. Boudoin to recovery against one line of insurance coverage, in this case her personal line, but affirm the denial of RLI's motion for summary judgment on the issue of whether Ms. Boudoin can choose to recover against her employer Eatel's line of coverage for the alternative reasons set forth above.[6]

**REVERSED IN PART; AFFIRMED IN PART; REMANDED AS INSTRUCTED IN OPINION**

---

[6] We do not address RLI's alternative assignments of error regarding ranking issues because they are moot.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL

JUDGES



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**OCTOBER 25, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 23-CA-65

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE SHAYNA BEEVERS MORVANT (DISTRICT JUDGE)
PAUL E. MAYEAUX (APPELLEE)        MATTHEW D. MOGHIS (APPELLANT)        MICHAEL S. FUTRELL (APPELLANT)
THOMAS P. OWEN, JR. (APPELLANT)   WILLIAM PETER CONNICK (APPELLANT)    JASON P. FOOTE (APPELLEE)
CATHERINE N. THIGPEN (APPELLEE)

### MAILED

JOHN J. ERNY, III (APPELLEE)
ATTORNEY AT LAW
1425 AIRLINE DRIVE
SUITE 200
METAIRIE, LA 70001

PAUL MICHAEL ELVIR, JR. (APPELLEE)
ATTORNEY AT LAW
3900 NORTH CAUSEWAY BOULEVARD
SUITE 650
METAIRIE, LA 70002

DEVIN CABONI-QUINN (APPELLEE)
KALEIGH K. ROONEY (APPELLEE)
ATTORNEYS AT LAW
2821 RICHLAND AVENUE
SUITE 202
METAIRIE, LA 70002

ASHLEY E. GILBERT (APPELLEE)
ATTORNEY AT LAW
ONE GALLERIA BOULEVARD
SUITE 1530
METAIRIE, LA 70001

TUCKER H. WIMBERLY (APPELLANT)
ATTORNEY AT LAW
3421 NORTH CAUSEWAY BOULEVARD
SUITE 408
METAIRIE, LA 70002